Thank you, Your Honors. May it please the Court, Charles Kling for Appellant and Plaintiff Maureen Richter, and she's here with us in the courtroom. This case is about Maureen Richter's four-year ordeal to obtain permits to build a trail to her waterfront, when it should have taken four to six months, according to her expert, a former planning director for the City of Bellingham with 30 years' experience. I've provided to you today his declaration because it's so important here. We have four issues in this Section 1983 case, whether there's a property interest, substantive due process, procedural due process, and equal protection. The due process claims rely upon, there needs to be a property interest found, the equal protection claim does not. So here the property interest is important. Here, what we've shown is that this case involves traditional, old property, the ownership and use of real property. That has a long tradition as being de facto, automatically, a property interest. United States Supreme Court in Roberge in 1928, any legitimate use of your real estate is a property interest. Can I interrupt you? Yes, Your Honor. For me, one of the cruxes of this case is, let's say we agree that you have a property interest in your land, your property, which includes the uses of the The scope of your property rights can be limited by the state laws and regulations, which in this case require permits for building trails and the like. So your property right actually isn't for complete use of your property. Your property right is whatever is left after the state has imposed its laws and regulations. Explain to me why that's not the case here. No, that's not the case, Your Honor. The first question is whether there's a property interest at all. And then if there's a property interest, then the due process clause kicks in and you get procedural due process protection. Yes, the state may regulate your property, but that's different than whether or not you have a property interest in the first place. Well, you always have an interest in your property. I mean, but you can't refuse the takings jurisprudence with what we have here, which goes back to what Judge Acuda is talking about, which is you have property that is subject to regulation. And just because you have property doesn't mean you have a property interest in doing anything you want to do on your property. Do you agree with that? Or do you think you can do anything? No, absolutely not, Your Honor. You have to go through permitting processes. Okay. But the question is whether or not you get procedural due process in that process. So the takings cases suggest that these state regulations, et cetera, don't really limit your property right. They say even a subsequent landowner can challenge these regulations on property as being a deprivation under the takings clause. Does that same analysis apply for procedural due process so that the right in property, the right to use a property for whatever purpose survives, and then with respect to the regulations and the police power, those are deprivations or those are impingements on your property right, but they're allowed under police power if there's due process? Is that applicable in that context? I think you're right, Your Honor. I mean, you talk about, I think you're referring to the Palazzolo case. Palazzolo, right. Which says, and in there the United States Supreme Court says that the state cannot redefine the property and that they're not allowed to do that just by regulations and take away your property rights by redefinition. And so, yeah, this is not an issue of whether or not the state can regulate your use of property. The issue is do you have a property interest in the first instance, which this is a threshold discussion. We're not talking about a taking of that property interest. We're talking about if you have a property interest, then you have procedural due process protection. And really looking at the Schneider case, yes, and if you have a property interest, then you might have something that could be taken, but that's just the beginning of the analysis for a takings case. But see, this is not a takings case. That's fine, Your Honor. I know, and you've said that, right, in your pleadings? Yes, that's correct. It's not a takings case. So it seems to me it's a little bit different analysis in the takings case and a case where we're talking. So it's not affirmative government taking of your property. And you've said, well, you do need to get the permits. So now the question is in getting the permits, let's just assume there was a property interest in that, whether it's intangible, attached also to the tangible property. What was the problem with the permit? Well, first, if there is a right, did she satisfy each of the permit requirements? Yes, Your Honor. The declaration of the expert, which with 30 years' experience and a former planning director, he said that her initial application was comprehensive and met all the requirements that the city provided to her, and that it should have been normal processes should have been approved within four to six months. What about there were two things? Ultimately, she did, I think, check all those boxes correctly, so to speak. But there was a question about forest service and the critical area, city critical area, whether she satisfied those. And as I read the briefs, I thought that was one of the contentions of the city, is that she didn't satisfy those two requirements. Well, obviously, they have a different story to tell. That should be told to the jury. But, Your Honor, she got the permits, so she did comply. Her project did comply with all those requirements. Could I just ask a clarifying question? Because there's some confusion. As I understood it, your argument is Ms. Richter had a property interest in her land, in the use of the land, and the city had regulations which they imposed without due process. Or are you arguing that Ms. Richter had a property interest in the right to have a permit, a government entitlement of a permit, and that she was deprived of without due process? Which is it? Your Honor, we are primarily relying upon the old property. As in, see, in Schneider, the Schneider court in Ninth Circuit says there's old property, traditional property, and that's a property interest. And then there's new property, which is government benefits, public employment. And that's where the Roth analysis applies. Okay. So you were relying in your briefs on Harris where the property right was the right to use your property. Right. And the challenge was the government regulation was imposed without due process. Is that primarily your argument here? That's our procedural due process argument relies upon that. And both Schneider actually mentions in discussing this that it mentions due process as well. And Action Apartments uses that same language. The use of property as being a property interest. And that's a substantive due process case. None of those had anything to do with permits, did they? That's a good question, Your Honor. Those cases did not. That's true. But it's still the same principle in Action Apartments. Do you have a property interest? And if you have a property interest. Because here, I mean, your client ended up four years later or so finally getting the permit. She wanted, right? And she could build her home. That's correct. So I gather the essence of your claim is the unreasonable delay in getting it. Is that essentially what you're claiming? The problem was, Your Honor, that my client had to spend tens and tens of thousands of dollars to push through all the unreasonable requirements the city was putting on her, three appeals that should not have been necessary if the permit had been processed timely. Because all this started because your client decided she's going to build her trail to the beach without any permits or anything. She just started, right? That's absolutely right, Your Honor. And she paid for that. I mean, $5,000 in fines were paid. And with an agreement with the city that she would submit applications to get permits. The problem was when she submitted the applications, they denied the permits. Could I ask you, as I understood the procedural due process argument relying on century pipe, I think. Concrete pipe. Concrete pipe, that's it. And so your argument was that because the city was an enforcer here and the city made the decision and then the hearing officer, by regulation, defers to the city, the hearing officer wasn't a neutral arbiter. Do I understand that correctly? That's correct, Your Honor. It's a constructive bias by the code provision that puts the standard of review on the hearing examiner, which is he's to give substantial weight to the staff decision and can only reverse if he finds it's clearly erroneous. That's an appellate standard. That means the hearing examiner could have believed that the decision was erroneous, but he can't reverse because it's not clearly erroneous. And why wasn't the city a neutral in this context? The city was making decisions about the permit. Is the city acting more as an enforcer? Is that your position? And why wasn't the city? Well, they're applying the rules, Your Honor, and there was no due process hearing at the staff level. And furthermore, with the declaration of Mr. Guyer, it shows that there was bias going on at the staff level. So that's why we needed a procedural due process hearing, a neutral arbiter, to resolve that problem, to correct that mistake, and that's what due process is always about. The mistakes can be for different, to fix incorrect decisions of all kinds, whether from mistakes, incompetence, or prejudice. I mean, prejudice can be personal. A staff person can not like you because you have long hair. It can be political. The property owner maybe did not support the mayor or other prejudice. But that neutral decision maker in the procedural due process hearing can fix all those mistakes. And Mr. Guyer in his declaration also says that if that had been done appropriately, they'd have a permit in four to six months. So, you know, the ‑‑ I'm trying to understand that aspect of your argument. So you have the city, which seems to me is granting the permit. I don't see that as enforcement when they're doing the permit process. And that makes a difference in our legal analysis, doesn't it? No, I don't think so, Your Honor. I mean, they're making a decision implementing their code provisions to the application. I think that's important to understand a misstatement, what I disagree with in their argument regarding concrete pipe, is that there had to be ‑‑ they argue that there was actual bias with the plan trustees. But that's a misunderstanding. The plan trustees are in the level of the staff here. And the arbitrator ‑‑ Well, I don't think that case has anything to do with this case because the ERISA context presents a very specific fiduciary situation. We're talking about normal administrative law here, aren't we? No, Your Honor. Actually, this is a very unusual situation to not ‑‑ Why? Why? To not have the opportunity for a de novo hearing, to have your opportunity to show that a mistake was made by staff. No, that's not true. I mean, you never ‑‑ you don't ever have a de novo hearing. In fact, that's what administrative law is. So when you lost, did she appeal? May I respond to that? Did she appeal to the next level? Yes, Your Honor. When she went to court to challenge the hearing examiner's decision, there was no final decision there. Right. And the city settled and she got her permit. But I want to go back to that, Your Honor. Okay. This standard is an appellate standard. Yes, clearly erroneous is the type of standard that appellate courts or a trial court on an APA reviewing the record does apply. Okay. So, Logan ‑‑ I'm sorry. Go ahead. But only when procedural due process has occurred below. That's a standard. If there was not procedural due process protections at the administrative level, that's a reason to reopen the record and not have it be on the record review, appellate review. So we have, like, in the Social Security Act case, there's a denial of benefits at the staff level, and then it goes to the ALJ who ‑‑ and the ALJ doesn't defer to the staff, I guess. The ALJ is the first level of due process. That's correct, Your Honor. So what you're saying is the city is more like the staff denying benefits and then you need to have some neutral ‑‑ there wasn't at the city, there wasn't any neutral decision maker. Because of the way the code has this constructive bias built in. What's your best case supporting your position? Concrete pipe, Your Honor, on the procedural due process. The Arresla case. Yes, Your Honor. It's the exact same standard. You don't have a permit case. Your Honor, I couldn't find a permit case in the United States. But the standard is the same. The rationale of the concrete pipe in the United States Supreme Court is the same here. Ms. Rector was denied an opportunity to have a neutral decision maker because of the standard of review. I have a minute left. I think I should reserve. Thank you. Good morning, Your Honors. May it please the Court. Mike Walter here for the appellee city of Des Moines. I'm going to try to address and respond to some of the comments that Mr. Kling made and also follow up on some of the good questions the panel asked. We would ask that the Court affirm Judge Peckman's summary judgment order in its entirety. We believe it is well written, well founded, and well supported by current and applicable case law. I want to correct a couple of, I think, misconceptions here and make it clear what we're really talking about, particularly in the context of the property interest argument, which, by the way, is just one element of the various due process claims. We've made alternative arguments for dismissal, irrespective of whether the Court finds a constitutionally protected property interest here. And particularly in the procedural due process context, I think this case cries out for summary judgment based on waiver. And I'll address that in just a moment. But let me kind of confirm a couple of kind of key points here. First and foremost, as I understand the appellant's arguments on the due process claims, particularly the procedural due process, what they should have done, they seem to be upset with the standard of review that is codified in the Des Moines Municipal Code at Section 18.94.113. That's the only section they have complained about. The remedy here was either of two things. One, you go to the city council and ask them to change the code. That's the standard that the hearing examiner is obligated to follow. They never did that. Or alternatively, through the court process, you file a declaratory judgment action and ask a court to declare that to be unconstitutional or violative of procedural due process of the Fourteenth Amendment or otherwise make these very arguments that counsel is making here today. Isn't that what they've in effect done? That's what they're trying to do. The 1983 case? I didn't mean to interrupt you. Yes, Your Honor. In fact, well, they're doing it through the back door, but they do not have a declaratory judgment claim before this court, and they never have on this. They did on the contract issue. That has been settled and resolved. As to the three claims that are before the court, the Section 1983 claims that are predicated on procedural due process, substantive due process, and equal protection, they have not made a declaratory judgment claim at all. And that's what they should have done here. One of their claims is bias. You know that they were mad at this lady because of all the procedures. So isn't that appropriate in a 1983? Well, first and foremost on that, Your Honor, there is just an utter absence of competent evidence on that point. Well, let's go to the first point. Is that a cognizable claim? And then the second would be whether it would be out on summary judgment or not. But is it a cognizable claim in the 1983 action, assuming there's a property right? Okay. And just so I understand your question, when you're talking about the bias, you're talking about the bias of the hearing examiner or the bias of the city people who processed all this? Okay. So just so I'm clear, their procedural due process claim is not predicated upon any bias of city staff. Their claim is predicated solely on their alleged constructive bias of the hearing examiner because of the standard review in the code. Okay. I read it as both. Both a taint of the process and the standard of review. And you may be right, but not the way I read it, Your Honor. I believe what they're saying, and Mr. Kling can maybe respond to this, is that the bias or the alleged retaliation of the city staff applies to the substantive due process claim, not the procedural due process claim. And if I'm wrong on that, can you correct me? Okay. But to answer your question on that, no, I don't think pure bias, and I think the Calicoa versus Arori Grande case that we've cited, the Ninth Circuit decision, answers that. In that very case, the appellant tried to, or the plaintiff tried to, offer a declaration speculating about bias as a prerequisite for the actions at issue there, the permitting decisions in that case. And the court rejected it and said, you don't get to a substantive due process claim by having an expert speculate about the bias or the animus or whatever that may be attendant in decision-making by municipal actors. Assuming we read the declaration in the light most favorable to the non-moving party, is there enough there to raise a genuine issue of material fact about bias? No, I don't believe so at all, Your Honor. And I think Judge Peckman adequately and rationally rejected that very argument, and she was operating on the summary judgment standard, all inferences go in their favor. But even if you accept as true everything that Mr. Geyer says, and we dispute every bit of it, and most of it is just pure speculation as Judge Peckman recognized in her decision on page 10, even if you accept it all as true, the standard for a substantive due process claim is egregious conduct, egregious conduct, and the Shanks versus Dressel case addresses this. The Bateson case addresses this. The recent Samson versus Bainbridge Island case addresses this. All of these Ninth Circuit decisions talk about the Herculean burdens of trying to prove a substantive due process claim, particularly in the land use context. And there's a reason for this, Your Honor. If that burden and that standard were not high, they've got to be able to show egregious official conduct that is irrational and arbitrary and without any substantive relationship to a legitimate government purpose. Even if you take Mr. Geyer's declaration at face value by everything he says, his opinions don't come close to meeting that standard. At best, what he is saying is, gee, the city could have handled this in a better way. They could have approved permits faster. They could have, you know, maybe been friendlier to her. They could have sped up the process, et cetera, et cetera, et cetera. That is the best that he's going to come out with. That doesn't come close to that standard. And, frankly, if this record were to support that kind of egregious standard, this court is going to be adjudicating land use cases from here to eternity because this is and, unfortunately, this is kind of what I do. I'm a land use lawyer for government. Can I bring you back to the procedural due process issue for a moment? Sure. I don't take it that you're arguing that a person doesn't have a property interest in their land. Is that correct? That is correct. I'm not saying that at all. What we're talking about, and this is the law. So are you saying that the property interest that you have in your land is limited by regulation so that there was no impingement on her property interest in her land? Exactly. Okay. Has there been any case that's actually said that? I mean, we have a number of cases that have said you have argued about the property interest in the permits and whether there was a due process issue with getting the permits and the permit entitlements. But is there actually a case that says your property interest is limited by regulations? I actually found all the cases I found were to the contrary. Well, okay. I can't point to you a specific single case other than the Bateson v. Ghizi case, which I think is right on point here with respect to the property interest not arising, a constitutionally protected property interest not arising through a discretionary permit, which is what we've got here. That's the permit issue. I'm talking just about the land issue. So the way I would answer that, Your Honor, I can't identify a specific case for you. But what I can tell you is this is how the police power authority of local government works. That has been accepted for over 100 years. Okay. So we have a case just recently in the circuit called Levon. You may not be familiar with it, but the question was whether people with a property interest in their – homeless people with a property interest in their possessions on the sidewalk were subject to a city ordinance which said that if you abandon it, then it's disposable. Then they will take it and dispose it. And we said that ordinance did not limit their property right in their chattels. So when I look at cases that were actually looking at your property right and the ordinance or a government, it seemed to be the opposite, that, in fact, it didn't limit your right. You know, in other words, the police power could regulate the right, but you could challenge it under a due process theory. Well, I think you're correct on that, Your Honor. And that gets back to the earlier argument I made that their remedy here was to challenge these regulations through a declaratory judgment action or as part of this lawsuit and say the development exception requirements under Des Moines Municipal Code Chapter 1886, blah, blah, blah, is unconstitutional or it's arbitrary or it's oppressive. They haven't done any of that. They've made no challenge whatsoever to any city regulation at all here. And I understand your argument, Your Honor, and that is the way – I'm not saying every government regulation passes constitutional muster because that clearly isn't the case. The flip side is, though, there is a lot – as we all know, there's a lot of regulation out there, both at the state – well, federal level, state level, local level. And to say that those regulations can't be imposed against property owners would eviscerate every one of those regulations. It would be unenforceable. So the city has the police power to have these regulations in the state on trails and construction, but you're not arguing that they're not challengeable, right? I'm not arguing that at all. Absolutely not. And, frankly, we may have a very different case here had they gone forward and challenged those and said, you know, through this same lawsuit or a separate lawsuit, that the development exception requirements that Mr. Frederick's made his decision under are oppressive or arbitrary or capricious or outside the ambit of the police power. Those challenges are made all the time, but they're done – Does it matter here whether the city was acting as an issuer of a permit or an enforcer of regulations in terms of legal analysis? No. I don't think it makes a difference, at least not under the case law I'm aware of, Your Honor. I mean, the fact of the matter is what we're looking at under either a procedural due process or substantive due process, the analysis, I think, is the same, whether the city's acting in a permitting capacity or an enforcing capacity. For the most part here, the claims they are making are through the permitting capacity. The enforcement part of this case was resolved through the Voluntary Code and Compliance Agreement back in 2007. So why did it take five years for Mr. Richter to get this permit? Well, that's another issue where we have a bona fide dispute. The record, Your Honor, really doesn't support a five-year delay. What it shows is – and I've got to make this clear because we've mentioned it in the brief – they needed a shoreline substantial development permit to do the lower part of the trail work here. It was absolutely required under state law. The hearing examiner told them to do it. It took them 991 days from the date the city first told them, You need a shoreline substantial development permit to actually apply for that. Once they did finally apply, which was June 23, 2009, they got their permits, their approvals, and were ready to go less than two years later. So this is not a five-year delay case. That is a gross misrepresentation of the record. What we're talking about actually is one year and ten and a half months. That's not a short period of time. Well, it's not short, but understand, Your Honor, and I agree with you. I mean, you know, I do this work. I'm sensitive to it, and I'm a landowner, and I've had to apply for shoreline permits before. It's no fun, okay? But the regulations are there. There are state regulations under the Shoreline Management Act, and there are regulations under the city code. Frankly, and I can't cite any evidence or record, but I think counsel will agree with me, there are instances of shoreline regulations that permits take five, six, seven years, okay? It's depending on appeals and delays and how accurate the information is, it is a complex body of law. This is not like a building permit, and I think that is key here. This is not a ministerial type of permit where you go through and check some boxes and say, she submitted A, B, C, and D, issue the permit. That's administrative or ministerial. This is a quasi-judicial process, and it's discretionary, and it has oversight by the State Department of Ecology, and that is another wrinkle here. Can I just understand? So the only aspect of this scheme of regulations that they're challenging, as I understand it, is the particular procedure for review of the denial of their permit application. They're arguing that because of the code, the hearing examiner was not neutral, and that deprived them of due process. Can you help me understand why they can't, in your view, they can't challenge that aspect of the regulations in this case? Well, they could have. But why can't they, why didn't they, and why aren't they now before us? Could you explain that? I wish I could. The answer, real quickly, Your Honor, is they had every opportunity to make the very challenges they're making here before the hearing examiner. They should have brought this up to the hearing examiner. Saying it's not exhaustive? Well, no, it's not an exhausting issue, Your Honor. It's a you don't have the authority to do this issue, or the standard of review is unconstitutional or illegal. Because wasn't this in their LUPA case, and then they preserved the 1983 action? They could have raised these exact issues in the LUPA case. They did not. That's the waiver argument we've made, Your Honor. They had every opportunity, both at the hearing examiner level and also at the LUPA level. They abandoned the LUPA. They never raised it once, Your Honor. And that's just classic waiver. Thank you. Thank you, Your Honor. I think you have about a minute. Thank you, Your Honor. The whole deck relief argument, that's a red herring. We obtained the permits. We appealed to the Shoreline Hearings Board. We got the permits. That was the deck relief we needed. Once we had the permits, all that was left was damages. The waiver argument is also inappropriate because the hearing examiner had no authority to make a constitutional decision. Read our reply brief. He had to follow the code. In the LUPA proceeding, Richter won the LUPA proceeding. There was no point in asserting her constitutional rights. She reserved those in her settlement agreement at the end of the LUPA. She got her permit that she challenged, and then she reserved her constitutional claims, including her procedural due process. So it's totally appropriate to do it. Here she didn't waive it. You can't impliedly waive it. That's the Walls case we cite in the reply. The property interest, they never mention the Schneider case, never in their briefs, not here. They don't discuss it. They don't talk about it. They don't talk about old property versus new property. This is an old property case. It's like patents. It's like money. It's property. It's real property. It's a property interest. It's not the Roth analysis. Once you have a property interest, now we apply due process. We apply the concrete pipe analysis. And then as far as substantive due process and equal protection, they kind of merge together because of irrationalness. Mr. Geier's declaration, look at it. It's not speculation. It's not conjecture. He substantiates every position he takes, and he says that the staff was prejudiced and was out to punish Ms. Richter, and as a result they ignored the technical engineering reports that said there was no landslide hazard. That's ignoring the facts and circumstances. That's traditional arbitrariness. It should have gone to the trial. Let the jury decide. If the court wants to eliminate this Zoning Board of Review, the answer is, Your Honors, send these cases to trial. As in the first Del Monte Dunes case, these cases should go to trial. If the court puts out that rule of law that these cases for substantive due process and equal protection should go to trial, then the judges and you will not have to look at those on these mountainous records. Instead, it will be sent to trial, and what happens when things are sent to trial? Cases settle. All right. Thank you, Your Honor. Speaking of cases settling, if you want the services of the Ninth Circuit mediator, they are available, your choice, your option. The case just argued, Richter v. Des Moines, is submitted. The next case for argument is United States v. Schiff. Thank you for your argument, gentlemen. Thank you.
judges: Gilman, McKeown, Ikuta